IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE T. HAYES, | ) | CASE NO. 1:16 CV 365 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Julie Townsend Haynes under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my

---

[1] ECF # 22. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Hayes who was 34 years old at the time of the administrative hearing,[11] has a bachelor's degree[12] and resides with her parents.[13] Her past employment history includes work as a cashier, furniture sales person, post closer/mortgage clerk, administrative assistant, and customer service representative/scheduler.

The ALJ, whose decision became the final decision of the Commissioner, found that Hayes had the following severe impairments: multiple sclerosis, loss of visual acuity (left eye retinal detachment, vitreous hemorrhage left eye, cataract OD), an affective disorder, and

---

[5] ECF # 6.

[6] ECF # 13.

[7] ECF # 23 (Commissioner's brief); ECF # 18-2 (Hayes's brief).

[8] ECF # 23-1 (Commissioner's charts); ECF # 18-3 (Hayes's charts).

[9] ECF # 18-1 (Hayes's fact sheet).

[10] ECF # 25.

[11] ECF # 12, Transcript ("Tr.") at 37.

[12] *Id*. at 56.

[13] *Id*. at 53.

anxiety disorder (generalized anxiety disorder, panic disorder, without agoraphobia) (20 CFR 404.1520(C) and 416.920(C))._[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Hayes's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, stand and walk for 2 hours of an 8-hour workday, and sit for 6 hours of an 8-hour workday. The claimant can frequently stoop, kneel, and crouch, she can occasionally climb ramps and stairs, and she can occasionally balance, but she can never climb ladders, ropes or scaffolds, and she can never crawl. The claimant should avoid concentrated exposure to extreme heat, she should avoid all exposure to hazards as commercial driving, operating dangerous machinery and unprotected heights, her ability to push and pull is limited in both the upper extremities to frequent operation of bilateral hand controls, and her handling and fingering is limited bilaterally to frequent. The claimant is further limited to no fast paced work or high production quotas, superficial interaction with others, meaning of a short duration for a specific purpose, and she can perform low stress work, meaning no arbitration, negotiation, responsibility for the safety of others, or supervisory responsibility.[15]

Given that residual functional capacity, the ALJ found Hayes incapable of performing her past relevant work as a cashier, furniture sales person, post closer/mortgage clerk, administrative assistant, customer service representative.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[14] *Id*. at 30.

[15] *Id.* at 32.

[16] *Id*. at 37.

determined that a significant number of jobs existed locally and nationally that Hayes could perform. The ALJ, therefore, found Hayes not under a disability.[17]

**B.     Issues on judicial review**

Hayes asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hayes presents the following issue for judicial review:

- Whether the ALJ erred in rejecting the opinion of plaintiff's treating physician.[18]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by

---

[17] *Id*. at 38.

[18] ECF #18-1 at 1.

> this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such

---

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a

---

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers*, 486 F.3d at 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary

---

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree

---

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

### B.  Application of standards

This case presents the straightforward issue of whether the ALJ erred in "disagreeing" with the functional capacity opinion of the claimant's treating physician, while "agree[ing]" with and giving "significant weight" to the functional capacity opinions of two state agency reviewing physicians.

The ALJ here began her discussion of the relevant opinions by noting that Dr. Daniel Ontaneda, M.D., was Hayes's treating physician, and further stating that Dr. Ontaneda rendered a functional capacity opinion in February 2013.[70] The ALJ then specifically related that in this opinion Dr. Ontaneda "suggested" that Hayes was unable to sit, stand or walk for

---

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] Tr. at 34.

-13-

eight hours in an eight-hour work day, and that she had other mental and physical limitations that would "essentially preclude all full time employment at any exertional level."[71] The ALJ concluded without more that she "did not agree" with these statements by Dr. Ontaneda.[72]

The ALJ proceeded to immediately discuss the medical evidence that she found to be "contrary" to Dr. Ontaneda's opinion.[73] In that regard, she initially cited to a 2011 clinical note that described Hayes's condition as a "'rather mild, relapsing remitting MS.'" [74] She then further cited to six separate MRI images of the claimant's brain from October 2010 to May 2014 that the ALJ characterized as "show[ing] no significant changes over time."[75] Finally, after acknowledging that Hayes had shown loss of sensory function in both her upper and lower extremities, the ALJ concluded that Hayes had "reported few significant symptoms" and that her physical examinations had been "mostly normal," with no need for a cane or assistive device."[76]

At this point, the ALJ discussed the functional capacity opinions of Dr. Rose Amiri, M.D., and Dr. Steve McKee, M.D., two state agency reviewing physicians.[77] The ALJ

---

[71] *Id*. (citing transcript).

[72] *Id*.

[73] *Id*.

[74] *Id*.

[75] *Id*. (citing record).

[76] *Id*. (citing record).

[77] *Id*.

recounted that both opinions had found that Hayes was capable of "light exertional work activity," subject to various specific limitations.[78] The ALJ concluded that she "agrees with" these opinions, and that therefore they should be given "significant weight."[79]

In many ways, this is a troubling decision by the ALJ. To begin with, this December 2014 decision comes almost two years after *Gayheart* was decided in March 2013. As such, it remains disheartening to observe that *Gayheart*'s clear statement about the two-step analytical path - firmly grounded in the regulations themselves - which is to be followed in addressing the functional opinion of a treating source is still largely ignored.

Further, the absence of a *Gayheart* analysis in this case means that I must begin a judicial review without even the basic determination by the ALJ of any specific weight to be assigned to Dr. Ontaneda's opinion. While the ALJ's statement that she does not "agree with" Dr. Ontaneda's opinion does support an inference that the weight assigned is something less than controlling, it provides little guidance beyond that.

Moreover, any attempt to more fully understand the ALJ's reasoning in this regard is further impeded by the fact that the ALJ never openly acknowledged or explicitly discussed the fact that Dr. Ontaneda is a board-certified neurologist specializing in the treatment of multiple sclerosis at the Mellen Center of the Cleveland Clinic, as well as an assistant professor of medicine at Case Western Reserve University, who has published widely on MS, including being the author or co-author of the multiple sclerosis sections of medical

---

[78] *Id.*

[79] *Id.*

textbooks.[80] This high level of professional expertise in the relevant medical specialty, as well as his history of directly examining and treating Hayes on 12 occasions over nearly four years,[81] are precisely the factors that are behind the preference given in the regulations to the treating physician's opinion.

Here, in addition to the lack of any specific assignment of weight, neither Dr. Ontaneda's clinical specialty nor the length of the treating relationship was directly discussed. As such, I am significantly disadvantaged in attempting to judicially review the ALJ's ultimate decision to prefer the functional opinions of two non-specialist, records-review-only physicians over that of Dr. Ontaneda.

As the Commissioner herself notes, a key feature of Hayes's symptoms has been that they are "intermittent" and not "unremitting."[82] Yet, symptoms that regularly re-occur, even if not in a predictable manner, may well be disabling - a judgment more likely to be credibly made by a specialist with a long-term view of the claimant. Moreover, the fact that Hayes's MRIs showed no new brain lesions attributable to MS is not a "good reason" to refute the fact that even without new brain lesions Hayes continued to experience symptoms that the

---

[80] *See*, http:www.doximity.com/pub/daniel-onteneda-md

[81] *See*, tr. at 386-89, 393-95, 431-32, 437-38, 443-53, 465-67, 490, 557-58, 850-56, 861-63, 897-81.

[82] ECF # 23 at13.

Commissioner herself admitted continuously "waxed and waned" and required additional treatment to bring under control.[83]

## Conclusion

In sum, for the reasons stated, the ALJ's opinion here does not provide "good reasons" in the form a sufficiently clear "logical bridge from the evidence to the conclusion"[84] that Dr. Ontaneda's treating source opinion - which presumably received less than controlling weight - was given lesser weight than those of the review-only state agency sources. Thus, the decision of the Commissioner to deny benefits to Julie T. Hayes is hereby reversed, and the matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: March 16, 2017                                s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[83] *Id*. at 14.

[84] *Smith v. Comm'r of Soc. Sec.*, 2014 WL 1944247, at *7 (N.D. Ohio May 14, 2014)(quoting *Hale v. Colvin*, No. 3-13cv182, 2014 WL 868124, at *8 (S.D. Ohio Mar. 5, 2014)). I note again that my opinion in *Smith* - which is now almost three years old - contains a more complete discussion on how ALJs can more fully comply with the now 12-year-old "good reasons" requirement at the heart of *Gayheart*.